Date signed February 20, 2008



PAUL MANNES
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| In Re:<br>**Johnny Ward and Deborah Ward,**<br>Debtors. | Case No. 04-23913PM<br>Chapter 13 |
|---|---|
| **First Franklin, a Division of National City Bank of Indiana, and South Point, Inc.,**<br>Plaintiffs,<br>v.<br><br>**Johnny Ward and Deborah Ward, U.S. Homeowners Assistance Service, LLC and Jamie Johnson,**<br>Defendants. | Adv. Proc. No. 07-0296PM |
| **Johnny Ward and Deborah Ward,**<br>Counter-Claimants,<br>v.<br><br>**First Franklin, a Division of National City Bank of Indiana,**<br>Counter-Defendant. | |
| **Johnny Ward and Deborah Ward,**<br>Cross-Claimant,<br>v.<br><br>**U.S. Homeowners Assistance Service, LLC and Jamie Johnson,**<br>Cross-Defendants. | |

**MEMORANDUM OF DECISION**
(Plaintiffs' Motion for Summary Judgment on
all Counts of Second Amended Complaint and Counterclaim)

The court has before it the Motion for Summary Judgment of First Franklin, a Division of National City Bank of Indiana ("First Franklin"), and South Point, Inc. ("South Point") (collectively, "the Plaintiffs"). The Plaintiffs seek summary judgment on all Counts of the Second Amended Complaint as well as on the Counterclaim filed by Johnny Ward and Deborah Ward ("the Wards" or "the Defendants").

To appreciate this adversary proceeding, it is necessary to understand the transaction that brought these parties to the position that they find themselves in today. The narrative begins with the efforts of Craig White ("White"), operating through an entity known as U.S. Homeowners Assistance Services, LLC,[1] to separate the Wards from the equity in their residence located at 14502 Danube Lane, Mitchellville, Maryland ("the Property"). White obtained a Power of Attorney from the Wards and "sold" the Property to Jamie Johnson ("Johnson") for $565,000.00. Johnson was apparently acting in concert with White. First Franklin financed Johnson's "purchase" of the Property – disclaiming all knowledge of the Wards' pending bankruptcy case at the time the sum of $565,000.00 was advanced by it. White pocketed a substantial part of the sale proceeds received after payment of the Wards' existing mortgage[2] on the Property from the First Franklin advance. This transaction occurred when the Wards faced foreclosure, because the protection of the automatic stay was lost to them as a result of their failure to make payments coming due on their mortgage after the filing of this bankruptcy case.[3] Whether Johnson ever intended to occupy the Property or make payments to First Franklin is an

---

[1] The Maryland corporate charter and business registration records show that the charter of this entity was forfeited on October 10, 2006.

[2] The term "mortgage" may be substituted by the court herein for the actual form of security, a deed of trust. As explained by the Maryland Court of Appeals, a deed of trust is the form of security generally used in counties bordering on the Potomac River. "For most purposes any such deed of trust *is* a mortgage." Le Brun v. Prosise, 79 A.2d 543, 547-48 (Md. 1951); 15 M.L.E. Mortgages §8 (2007).

[3] On January 4, 2008, this court denied the Wards' Motion to Dismiss and for Summary Judgment on the Claims of South Point, holding that under Maryland law, South Point stood in the shoes of First Franklin, with no more and no less rights than its assignor. During oral argument on the Plaintiffs' Motion, the Wards' counsel made reference to 11 U.S.C. § 549(c) and the power of a trustee to avoid a postpetition transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the bankruptcy case for fair equivalent value. However, that extraordinary power is limited to cases where notice of the filing of the petition appears on the land records where notice of the transfer is recorded. No such notice was filed in this case. Because the Plaintiffs extended fair equivalent value for their lien positions, 11 U.S.C. § 549(c) is of no benefit to either the Trustee or the Wards.

issue that the court may speculate on but need not decide.  The Wards continue to occupy the Property and have made no payments with respect to that occupancy either to First Franklin or its assignee, South Point.[4]

At oral argument on this Motion, counsel for the Plaintiffs and the Defendants agreed that the following facts pertinent to this dispute were undisputed:[5]

1.     The Wards filed this bankruptcy case under Chapter 13 on June 9, 2004.

2.     At the time of filing, the Wards owned the Property that is the subject of this controversy.  The Wards' Schedule A listed the Property with a value of $108,673.00, subject to a debt in the sum of $208,167.00 held by GMAC Mortgage Corporation ("GMAC").

3.     GMAC filed a Proof of Claim on June 22, 2004, in the amount of $239,502.86 pursuant to a Note secured by a Deed of Trust upon the Property including pre-petition arrears of $39,819.59.

4.     On October 28, 2004, GMAC filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) alleging that the Wards failed to make three payments following the filing of this bankruptcy case and, since the filing of this case, were further in arrears in the sum of $6,417.44, including fees and costs.

5.     On December 30, 2004, GMAC and the Wards entered into a Consent Order modifying the automatic stay whereby the Wards agreed to repay the post-filing arrears, then in the sum of $9,903.50, together with fees and costs of $650.00, over a six-month period beginning January 15, 2005, and to commence making regular monthly payments of $1,922.48 beginning January 1, 2005.  The Order further provided for the termination of the automatic stay in the event of the failure to cure defaults under the Consent Order.

6.     On January 27, 2005, the Wards executed a Special Power of Attorney authorizing White to execute all pertinent papers regarding the Property, including but not limited to deeds, deeds of trust and all required settlement powers.  This document was recorded on March 16, 2006.

7.     On January 31, 2005, an Order was entered confirming the Wards' Amended Chapter 13 Plan.  The Plan provided for monthly payments of $67.00 for six months, $500.00 for the next six months and then escalating to $2,836.00 for the next 48 months.

---

[4] South Point was added by consent as a plaintiff after the filing of this adversary proceeding following its acquisition of the Notes from First Franklin secured by the Property.

[5] The facts set forth herein appeared in the Memorandum of Decision entered on January 4, 2008, on the Wards' Motion to Dismiss this adversary proceeding.  Counsel reviewed the court's recitation of the facts and, except for paragraph 12 that is now corrected, agreed to their accuracy.

8. On May 18, 2005, GMAC filed a certificate of the Wards' failure to cure a default in performance of the Consent Order. (This enabled GMAC to proceed with foreclosure of its lien.)

9. On July 7, 2005, on the Wards' motion, the court passed an Order authorizing the Wards to refinance the obligation secured by the Property.

10. On February 22, 2006, the Wards signed a sales contract with Johnson as buyer. The price stated was $565,000.00, with all closing costs up to 6% of the sales price to be paid by the Wards. No settlement date was stated in the contract.

11. On March 9, 2006, the Property was conveyed by Deed to Johnson. The Deed was signed by White as attorney-in-fact, and was recorded on March 16, 2006, immediately after the Special Power of Attorney described in paragraph 6 above. The Deeds of Trust signed by Johnson securing loans made by First Franklin in the sum of $452,000.00 and $113,000.00 were then recorded immediately following the Deed. The HUD-1 Settlement Statement was signed by White, as attorney-in-fact, for the Wards. White also signed an Affidavit required by the title insurer, stating, *inter alia*, that the Affiant was not in an active bankruptcy proceeding or, if in bankruptcy, that the Affiant was given permission to sell the Property. As a result of the machinations of White, he or an entity controlled by him, received over $100,000.00 of the sales proceeds. The Wards' share of the sale proceeds was a check dated March 26, 2006, for $80,000.00 that was deposited in the trust account of their attorney. The Wards' obligation to GMAC was discharged by payment of $321,660.61 from the funds advanced by First Franklin.

12. On March 14, 2006, the Wards signed a Revocation of the Special Power of Attorney given to Craig White and U.S. Homeowners Assistance, LLC. This document was recorded among the land records of Prince George's County, Maryland, on March 15, 2006.

Count I of the Second Amended Complaint seeks a declaratory judgment that the first and second liens recorded against the Property now securing First Franklin's advances in the sum of $452,000.00 and $113,000.00, respectively, together with interest and costs thereon, may be enforced pursuant to the terms and conditions of the instruments. Count I also seeks a ruling approving the sale described in paragraph 11, *nunc pro tunc.*

Count II of the Second Amended Complaint, pleaded in the alternative, seeks a declaratory judgment that if the sale is not approved *nunc pro tunc* that the Plaintiffs are bona fide purchasers for value and that they be declared as holding valid and enforceable liens on the Property.

Count III of the Second Amended Complaint, also pleaded in the alternative, seeks a ruling that the Plaintiffs are equitably subrogated in the sum of $321,660.61 to the position of

Bayview Loan Servicing ("Bayview"),[6] the secured creditor whose lien was discharged by First Franklin's advances, together with the $80,000.00 paid to the Wards from the settlement proceeds.

The Wards' Counterclaim seeks a declaration of their rights under the emergency legislation that became effective on May 26, 2005, known as The Protection of Homeowners in Foreclosure Act ("PHIFA"), codified in Title 7, Subtitle 3, of the Real Property Article of the Annotated Code of Maryland. MD. CODE ANN. REAL PROP. §§ 7-301-315. The Wards contend that they are entitled to the return of the Property with no greater encumbrances than existed at the time of the transaction described in paragraph 11.

The Plaintiffs will be denied summary judgment as to Counts I and II. The success of these Counts hinge on this court's determination of the efficacy of the Wards' Revocation of the Power of Attorney given to White. The Revocation was recorded after the Deed was signed but before it was recorded. That being so, the issue is whether the Deed to Johnson was a viable instrument for the transfer of title. If the Deed was not viable, Johnson could not convey any interest in the Property, including the granting of the security interests to First Franklin. The court's research finds no controlling Maryland precedent on this issue.[7]

The court finds that the effect of the recordation of the Revocation prior to the recordation of the Deed is that the Deed became ineffectual for the purpose of conveying title to the Property. MD. CODE ANN., REAL PROP. §3-101(a) (2006) ("[N]o estate . . . or deed may pass or take effect unless the deed granting it is executed and recorded."). The Power of Attorney that was the train carrying this conveyance to Johnson was derailed by the Revocation prior to the recordation of the Deed. That being the case, the mortgages executed by Johnson conveyed no interest in the Property as she had none to convey. For this reason, the Motion is denied as to Counts I and II of the Second Amended Complaint.

The Plaintiffs will be granted summary judgment as to Count III with respect to their claim based upon the doctrine of equitable subrogation. The uncontradicted facts show that First

---

[6] Bayview appears to be the successor or agent of GMAC, the creator of the mortgages paid off by First Franklin's funding.

[7] Were the case dependent on this issue for resolution, the question is susceptible to certification to the Maryland Court of Appeals pursuant to MD. CODE ANN., CTS. & JUD. PROC. §12-603 (2006).

Franklin paid $80,000.00 to the Wards and satisfied Bayview's debt in an amount of $321,660.61. While the Wards' opposition to this Motion speaks of Plaintiffs' unclean hands, there is no fact in this record to support any conclusion other than that loans were made, perhaps imprudently, in good faith and that the Wards benefitted as a result.

The equitable maxim "where one of two parties, both guiltless of intentional wrong, must suffer a loss, the one whose conduct, act or omission occasions the loss must stand the consequences" has no application here. See Coppage v. Maryland Thrift Sav. & Loan Co., 252 A.2d 869, 877 (Md. 1969). There are no contending equities. The Wards empowered White to do what he did, and First Franklin did not bother to have the records of this court checked prior to advancing the funds that it did. The two elements upon which the Plaintiffs' claim of equitable subordination is based are fully satisfied by the admitted and uncontradicted facts. These requirements are:

> (1) . . . a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests.

First American Bank of Maryland v. Rinn (In re Advance Insulation & Supply, Inc.), 176 B.R. 390, 399 (BC Md. 1994), aff'd sub nom. Rinn v. First Union Nat. Bank of Maryland, 176 B.R. 401, 408 (D. Md. 1995) ("Courts have traditionally applied the doctrine of subrogation in the context of one who pays off a mortgage or encumbrance which the principal debtor has failed to discharge."). See also George L. Schnader, Jr., Inc. v. Cole Bldg. Co., 202 A.2d 326, 330 (Md. 1964). Accordingly, the Plaintiffs are entitled to be placed in the same position that Bayview was in prior to the release of the original deed of trust to the extent of $321,660.66. The Plaintiffs are likewise entitled to an order requiring that the $80,000.00 paid to the Wards from the settlement of this transaction either be returned to the Plaintiffs or the lien increased by that amount.

The Wards' Counterclaim for relief under PHIFA fails. The Plaintiffs fall squarely within the protection afforded by Real Property § 7-311(e) of the Annotated Code of Maryland, that provides:

> (e) A bona fide purchaser for value or bona fide lender for value who enters into a transaction with a homeowner or a foreclosure purchaser when a foreclosure consulting contract is in effect or during the period when a foreclosure reconveyance may be rescinded, without notice of those facts, receives good title

to the property, free and clear of the right of the parties to the foreclosure consulting contract or the right of the homeowner to rescind the foreclosure reconveyance.

As noted in the Affidavits presented by the Plaintiffs, First Franklin was a bona fide lender without knowledge at the time of the closing of the transaction of the fact that the sale of the Property was a "foreclosure reconveyance," that there was a "foreclosure consulting contract" in place or that Johnson was a "foreclosure purchaser."[8] The lack of diligence on the part of First

---

[8] Subsections (b), (c) and (f) of § 7-301 of the Annotated Code of Maryland, Real Property, provide:

(b) "Foreclosure consultant" means a person who:

    (1) Solicits or contacts a homeowner in writing, in person, or through any electronic or telecommunications medium and directly or indirectly makes a representation or offer to perform any service that the person represents will:

        (i) Stop, enjoin, delay, void, set aside, annul, stay, or postpone a foreclosure sale;

        (ii) Obtain forbearance from any servicer, beneficiary or mortgagee;

        (iii) Assist the homeowner to exercise a right of reinstatement provided in the loan documents or to refinance a loan that is in foreclosure and for which notice of foreclosure proceedings has been published;

        (iv) Obtain an extension of the period within which the homeowner may reinstate the homeowner's obligation or extend the deadline to object to a ratification;

        (v) Obtain a waiver of an acceleration clause contained in any promissory note or contract secured by a mortgage on a residence in foreclosure or contained in the mortgage;

        (vi) Assist the homeowner to obtain a loan or advance of funds;

        (vii) Avoid or ameliorate the impairment of the homeowner's credit resulting from the filing of an order to docket or a petition to foreclose or the conduct of a foreclosure sale;

        (viii) Save the homeowner's residence from foreclosure;

        (ix) Purchase or obtain an option to purchase the homeowner's residence within 20 days of an advertised or docketed foreclosure sale;

        (x) Arrange for the homeowner to become a lessee or renter entitled to continue to reside in the homeowner's residence;

        (xi) Arrange for the homeowner to have an option to repurchase the homeowner's residence; or

        (xii) Engage in any documentation, grant, conveyance, sale, lease, trust, or gift by which the homeowner clogs the homeowner's equity of redemption in the homeowner's residence; or

Franklin does not create a cause of action against it under PHIFA under the undisputed facts presented here. All that can be said of First Franklin is that it made loans that will cost it a lot of money, as it is unlikely that it will recoup from White, Johnson or U.S. Homeowners Assistance Services, LLC the difference between the amount advanced by it and the amount secured by its subrogated lien.

Counsel for the Plaintiffs shall submit an appropriate order on notice.

cc:   First Franklin
      4601 Powder Mill Road
      Centerpark Two #600
      Calverton, MD 20705

      Dale Kerbin Cathell
      Jason W. Hardman
      Jodie E. Buchman
      Richard M. Kremen
      DLA Piper US LLP
      The Marbury Building
      6225 Smith Avenue
      Baltimore, MD 21209-3600

---

(2) Systematically contacts owners of property that court records or newspaper advertisements show are in foreclosure or in danger of foreclosure.

(c) "Foreclosure consulting contract" means a written, oral, or equitable agreement between a foreclosure consultant and a homeowner for the provision of any foreclosure consulting service or foreclosure reconveyance.

(f) "Foreclosure reconveyance" means a transaction involving:

(1) The transfer of title to real property by a homeowner during or incident to a proposed foreclosure proceeding, either by transfer of interest from the homeowner to another party or by creation of a mortgage, trust, or other lien or encumbrance during the foreclosure process that allows the acquirer to obtain legal or equitable title to all or part of the property; and

(2) The subsequent conveyance, or promise of a subsequent conveyance, of an interest back to the homeowner by the acquirer or a person acting in participation with the acquirer that allows the homeowner to possess the real property following the completion of the foreclosure proceeding, including an interest in a contract for deed, purchase agreement, land installment sale, contract for sale, option to purchase, lease, trust, or other contractual arrangement.

South Point
c/o Jodie E. Buchman
DLA Piper US LLP
6225 Smith Avenue
Baltimore, MD 21209

Johnny Ward and Deborah Ward
14502 Danube Lane
Mitchellville, MD 20721

Michael Gregg Morin
P.O. Box 778
Severn, MD 21144-0778

Scott C. Borison
5500 Buckeystown Pike
Frederick, MD 21703

U.S. Homeowners Assistance Services, LLC
c/o Craig White, Resident Agent
5814 Hil Mar Drive
Forestville, MD 20747

Douglas B. Riley
Logan Russack, LLP
2530 Riva Road, Suite 400
Annapolis, MD 21401

Jamie Johnson
4501 Woodgate Way
Bowie, MD 20720

**End of Memorandum of Decision**